IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


WILLIAM SPENCER PASS,            )
                                 )
                Petitioner,      )
                                 )
        v.                       )      1:11CV399
                                 )
KEITH WHITENER,                  )
                                 )
                Respondent.      )


**MEMORANDUM OPINION AND ORDER**


**Auld, Magistrate Judge**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On May 4, 2006, in the Superior Court of Guilford County, a jury found Petitioner guilty of two counts of second-degree rape in case 05 CRS 80738 and the state trial judge imposed two consecutive sentences of 100 to 129 months. (Id. §§ 1-6; Docket Entry 5-13 at 23; Docket Entry 5-14 at 4-7.) Petitioner filed a direct appeal, but, on February 19, 2008, the North Carolina Court of Appeals upheld the convictions. State v. Pass, No. COA07-584, 188 N.C. App 848 (table), 656 S.E.2d 735 (table), 2008 WL 434597 (Feb. 19, 2008) (unpublished). Petitioner did not pursue his direct appeal further. (Docket Entry 1, § 9(g) and (h).) In November 2010, Petitioner submitted a motion for appropriate relief ("MAR") in Guilford County Superior Court. (Docket Entry 5-5.)[1] That MAR was

---

[1] The MAR contains conflicting information as to when exactly in November of 2010 Petitioner actually submitted it. (Compare Docket Entry 5-5 at 6 (dating
(continued...)

denied (Docket Entry 5-6), as was a subsequent petition for certiorari he filed with the North Carolina Court of Appeals (Docket Entry 5-9). Petitioner then filed his instant Petition, which the Court received on May 13, 2011 (Docket Entry 1 at 1) and which he dated as having been signed and mailed on May 10, 2011 (id. at 14). Respondent has now moved to have the Petition dismissed (Docket Entry 4). Petitioner responded (Docket Entry 7) and Respondent filed a reply (Docket Entry 8). The parties have consented to disposition of the case by a United States Magistrate Judge. (Docket Entry 10.)

## Petitioner's Claims

Petitioner raised four potential claims for relief in his Petition. The first three assert that his trial counsel was deficient for failing to prepare and present a defense at trial, failing to conduct witness interviews to help mitigate the sentence, and failing to spend adequate time with Petitioner before the trial, respectively, and the fourth complains about Petitioner's alleged absence from pretrial hearings. (Docket Entry 1, § 12.)

---

[1](...continued)
MAR as "submitted" on November 16, 2010) and id. at 7 (dating MAR as "sworn and subscribed" to on November 16, 2010), with id. at 7 (giving date of service on State as November 3, 2010). The Petition lists November 17, 2010, as the date of the MAR's filing. (Docket Entry 1, § 11(a)(3).) The state trial court order denying the MAR describes it as "filed on or about November 5, 2010." (Docket Entry 5-6 at 2.)

## Discussion

Respondent requests dismissal on the ground that the Petition was filed[2] beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and

---

[2] "In [<u>Houston v. Lack</u>, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." <u>Morales-Rivera v. United States</u>, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." <u>Id.</u> at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. <u>See Allen v. Mitchell</u>, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. <u>Cf.</u> <u>United States v. Torres</u>, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); <u>but see</u> <u>Smith v. Woodard</u>, 57 Fed. Appx. 167, 167 n.* (4th Cir. 2003) (implying that <u>Houston</u>'s rule governed filing date of § 2254 petition); <u>Ostrander v. Angelone</u>, 43 Fed. Appx. 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court declines to consider this matter further.

-3-

made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended.

Here, Petitioner's convictions became final on direct review when he did not timely file a notice of appeal or petition for discretionary review with the North Carolina Supreme Court on March 25, 2008, i.e., 35 days after the North Carolina Court of Appeals' denied his direct appeal on February 19, 2008. See Harb v. Keller, No. 1:09CV766, 2010 WL 3853199, at *2-5 (M.D.N.C. Sept. 28, 2010)(unpublished). Petitioner's year to file a habeas action in this Court thus began to run on March 25, 2008, and expired on March 25, 2009, without his having done so.

Petitioner did later file an MAR in the state court on November 5, 2010; however, state court filings made after the limitation period in § 2244(d)(1) has expired do not revive or restart the time to file in this Court. Minter v. Beck, 230 F.3d

-4-

663, 665 (4th Cir. 2000).  Accordingly, the Petition was filed out
of time.

Petitioner has put forth nothing to dispute the analysis just
set out or to show that his Petition was timely under § 2244(d)(1).
(See Docket Entry 1, § 18; Docket Entry 7.)  However, in his
opposition to the dismissal motion, Petitioner makes several
arguments the Court construes as requests for equitable tolling.
(See Docket Entry 7 at 1-3.)

The Supreme Court has determined that § 2244(d)(1)'s one-year
limitation period is subject to equitable tolling.  Holland v.
Florida, 130 S. Ct. 2549, 2562 (2010).  Equitable tolling may apply
when a petitioner "shows '(1) that he has been pursuing his rights
diligently, and (2) that some extraordinary circumstance stood in
his way' and prevented timely filing."  Id. (quoting Pace v.
DiGuglielmo, 544 U.S. 408, 418 (2005)).  Unfamiliarity with the
legal process and lack of representation do not constitute grounds
for equitable tolling.  United States v. Sosa, 364 F.3d 507, 512
(4th Cir. 2004).  Likewise, "garden variety" negligence by counsel
does not serve as a ground for equitable tolling.  Holland, 130 S.
Ct. at 2564.

In this case, Petitioner first argues that, on May 4, 2006,
the United States Department of Veterans Affairs found him
incompetent to manage his own affairs.  (Docket Entry 7 at 2.)
This contention does not entitle Petitioner to equitable tolling.
To warrant equitable tolling on this ground, Petitioner must show
that his alleged mental impairment did not merely lessen his

-5-

ability to file or make filing difficult, but actually prevented him from understanding his legal rights and acting on them. Rhodes v. Senkowski, 82 F. Supp. 2d 160, 168-70 (S.D.N.Y. 2000) (collecting cases and deducing standard). Indeed, "[s]everal courts of appeal have held that for the mental incapacity of a petitioner to warrant equitable tolling of a habeas statute of limitations, the petitioner must demonstrate that the incompetence affected his or her ability to file a timely habeas petition." Robertson v. Simpson, 624 F.3d 781, 785 (6th Cir. 2010). Conclusory allegations will not satisfy a petitioner's burden in this regard. Rhodes, 82 F. Supp. 2d at 172.

The record reveals that Petitioner's case was "called for trial during the April 24, 2006 term . . . and the trial commenced on Thursday, April 27th [2006]." (Docket Entry 5-6 at 2.) "[O]n Friday, 28 April 2006, [P]etitioner began testifying. At the end of the day, the State had not finished with [his] cross-examination, and the court recessed for the weekend." Pass, 2008 WL 434597, at *4. "On Monday morning [May 1, 2006], after the weekend trial recess, [Petitioner] was not present in court . . . [because] on the previous Sunday evening [April 30, 2006], [Petitioner] reported to the Veteran's Administration . . . for treatment of his mental instability." (Id. at 2.) "On Thursday, 4 May 2006, several days after [Petitioner's] release from the [Veteran's Administration] Hospital, he was present in court with his attorney. [Petitioner] told the court that he was ready to re-

-6-

take the witness stand and to move forward with the trial." _Id._ at 3.

As the North Carolina Court of Appeals observed on direct appeal, "there is no evidence in the record to indicate [Petitioner] was involuntarily committed to a [Veteran's Administration] Hospital." _Id._ at 3. Further, shortly after Petitioner reported to the Veteran's Administration for treatment on April 30, 2006, his "doctor at the [Veteran's Administration] Hospital apparently believed [Petitioner] was sufficiently competent and fit to be released from the hospital." _Id._ at 5. More importantly, Petitioner has produced no evidence of incompetence during the time that his one-year period to file in this Court was running. (_See_ Docket Entry 7 at 2.) Nor has Petitioner shown that his mental condition changed in any way that would explain why he became able to file his instant Petition. (_See_ _id._) In sum, Petitioner has not demonstrated the profound level of mental incapacity and causation necessary to allow for equitable tolling.

Petitioner also maintains that he was ignorant of the law and had to learn of his claims by talking with other inmates and reading books. (_Id._) This contention does not entitle him to equitable tolling. _See_ _Sosa_, 364 F.3d at 512.

Finally, Petitioner states that his trial attorney first sent him his case file on May 13, 2011, and that, on February 18, 2009, he received a letter from North Carolina Prisoner Legal Services ("NCPLS") telling him that the organization would not provide him

-7-

with post-conviction representation. (Docket Entry 7 at 2-3.) Given that Petitioner mailed his instant Petition on May 10, 2011, the record establishes that he did not need his case file to prepare and to submit his Petition. Petitioner's attorney's actions thus did not prevent Petitioner from making a timely filing. As for NCPLS, Petitioner knew in February of 2009 that his direct appeal had ended and that NCPLS would not represent him in post-conviction matters. Nevertheless, he made no post-conviction filing in the state courts until November 5, 2010, or more than a year and a half later. Therefore, even if waiting on a response from NCPLS could provide Petitioner with grounds for equitable tolling, it would not make his Petition timely.[3]

In sum, Petitioner has not shown entitlement to equitable tolling and his Petition thus remains untimely.

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss (Docket Entry 4) is granted, that the Petition (Docket Entry 1) is dismissed, and that Judgment is entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 15, 2012

---

[3] The Court does not hold that waiting on a response from NCPLS can entitle a prisoner to equitable tolling. In fact, at least one case in this Court has held that it does not. See Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. August 1, 2002)(unpublished).